3-12-0442, consolidated 3-12-0663, Eric D. Prayer, appellant by Eric Pryor, v. Schwartz, affiliated by Stephen C. Pryor. Mr. Mayo. Thank you, Your Honor. And good afternoon at this point. May it please the Court, counsel. My name is Eric Mayo. I represent the appellant in this case, Eric Pryor. We're here because on Sunday in December of 2011, the defendant in this matter, Jack Schwartz, an attorney in Rock Island, entered the Rock Island County Courthouse and proclaimed publicly and to a deputy, chief deputy of the courthouse, that fellow attorney Eric Pryor was a security threat because he carried a weapon. What exactly did, I'm sorry. Which building was it, the old courthouse or the new annex? This is the old courthouse. Sorry, Justice Schmidt. What exactly did he say? And I was about to address that, Your Honor. Thank you. The exact nature of the statement is unclear. If you know, not the exact nature, if you know exactly what he said. The exact words are unknown, disputed at this point. Certainly, Deputy Weikert expressed it in a statement that he had given in an interdepartment memo that the language used was, you should check Eric Pryor, he carries a gun. What is beyond dispute in this matter is that following whatever statement was made, Rock Island and other courts within the 14th Circuit changed their security policies to start checking attorneys when they came in the building, whereas previously they did not. And for some time, Mr. Pryor was the result or received some of the blame for this, obviously unnecessarily so. So whatever the statement was, that was the end result. And the defamation suit then followed. Let me ask you, if, Mr., your client even had any information in the court file that said that he owns a concealed, has a concealed carry permit in Iowa, he's an RA instructor, guns are his hobby, what is, if somebody has a concealed carry permit and if somebody says this guy carries a gun, what's defamatory about that? Well, what's defamatory about that, and this is similar to what the trial court in this matter alluded to, is the notion of innuendo. In Illinois, it would be illegal for Mr. Pryor to carry that gun in the manner that he is lawfully able to do in Iowa. You can throw a rock from that courthouse to Iowa, right? That's correct. And so you think, gee, maybe if he carries a gun concealed in Iowa, it would be unreasonable, something that that guy could forget because you're so close. I mean, is that a defamatory statement for a guy who says, I've got a concealed carry permit in Iowa? And by the way, he didn't say he carries guns in your courthouse. He said he carries a gun. And that is the statement that Deputy Weicker relayed, obviously, in the memo. We're not accepting that, or at least our position in the underlying case at the trial level was not that that was true, but the substance was Mr. Schwartz had made the statement in public with other people present and that it implied Mr. Pryor was carrying a gun or did carry a gun and should be searched. Again, our position is that whatever the statement was, it implied some threat that required the action of courthouse security to avoid threat to others in the courthouse, in the building. Well, under the innocent construction rule and the law of defamation, do we look toward implications that might be defamatory, or do we look and say, if there's any innocent construction, that it's not defamatory? Certainly, Your Honor, under the innocent construction rule, we would take the innocent construction here, look for some way of reading the statement that would be innocent. But at the same time, we have competing sets of analyses here. There's the innocent construction rule and also this notion of innuendo, which, again, the trial court here pointed that out in its ultimate decision on the sanctions issue, is that that was the saving grace, so to speak, as far as the factual basis is that the underlying complaint was sufficient in that it alleged this innuendo. In other words, were Mr. Pryor to have entered the Rock Island County Courthouse with a gun, it would have been illegal. And that the defendant, Schwartz, was asking the deputy to check him implied that he presented some risk of doing this or that he has done this in the past. That's really the basis, or that's really, I think, what this boils down to. Wasn't the defendant, in this case, weren't his lawyers in his office being checked going into that courthouse? Yes. What kind of aggravated him? That actually draws into another point that I'd like to make in a few moments. But, yes, that is what appears to have precipitated the comment. In other words, attorneys ordinarily go through the main door, but attorneys undergoing some difficulties or having a handicap would have to go through the handicapped accessible entrance and, at least at the time, were subject to greater security measures, such as a search on their person or as far as the bags that they're carrying. And his implication was that, you know, if I'm having to go through this, at least it appears that he was upset because he had to be subjected to that, whereas Mr. Pryor and other attorneys were not. Well, isn't that inconsistent with what you told me a little bit ago, and that was that this checking of lawyers going into the courthouse occurred after this statement? Well, that's only at the handicapped accessible entrance. At the main entrance, where most attorneys enter the building, they were just allowed to pass through the security system. You didn't have to have your bags checked. You didn't have to be checked by a search or anything like that. There was a metal detector, but if you set it off, routinely attorneys were allowed to just pass through. The issue obviously became more critical, I believe, when people began to associate this change in policy with behavior on the part of Mr. Pryor. That's why the defamation action arose. That's why we're here today, so to speak. But what I'd like to discuss is how I believe the underlying decision from the trial court in this matter expands. Again, this was based on the application. The motion to dismiss was granted here based on the application of the attorney litigation privilege, which is an absolute privilege. And the way in which the trial court applied it in this matter expands the privilege. It eviscerates what is a longstanding requirement that the statement that's made, the allegedly defamatory statement that's made, is pertinent or relevant to the ongoing litigation between the parties. And to expand it in this manner would undermine the essential logic of having an absolute privilege to begin with. And just returning to the first point, this privilege has been construed in a narrow way. Because it is absolute in scope, and my brief sets this forth, it's been interpreted narrowly. And the Illinois cases that are referred to in the record, the Weiler v. Stern, for instance, is relating to a letter an attorney gave to two of his clients relating to another client pertaining to ongoing litigation. The Scott case involves statements made during a meeting between parties in the context of their litigation. Relating to a third party, yes, but his involvement with the other party in that matter. Allegations of criminal conduct that weren't exactly pertinent to the underlying litigation, but were relevant to that discussion that day. So in both of these cases, it's heavily relied on by both the FLE, the defendant, and the trial court. There's some relevance, there's some pertinency to the statements and the ongoing litigation. What wasn't established here is when these statements were made. In Deputy Weikert's memo, it says the 19th. In other documents, there's the 21st for now, as far as the day where Mr. Schwartz and Mr. Puryear were to appear in court together. So there isn't anything in the record that conclusively establishes that this was immediately before the ongoing litigation between the parties, or that it was prompted by the fact that Mr. Schwartz was in some way concerned about the safety of his client, or anything like that. Other cases, Golden v. Mullen, I cite it in my brief, establishes some of the boundaries here. Courts have refused to extend this to communications to media, communications to an opposing counsel's spouse, although related to the subject matter of the litigation. Here we have a third part, similar to the media, similar to an opposing counsel's spouse, unrelated to the matter. We have a statement that in no way is related to the matter, or pertinent to the matter. One carrying a gun into a courthouse does not relate to the subject matter of the order of protection that the parties were litigating at that time. Not necessarily that day, but at that time. And so taking the requirement for pertinency, which admittedly is not strictly applied, but is at the same time still a requirement. It's not strictly applied, but it's applied nevertheless. There's no pertinency here. There's no relevance to the ongoing litigation. How would it be relevant to how safe Mr. Puryear was when he was up there arguing a position contrary to your clients? I beg your pardon? Would it relate to the litigation? If he's up there arguing a case, and he thinks your client's going to bring a gun there into the courtroom and shoot him, and as wild as that may sound,  would that be relevant to litigation? Yes, Your Honor. I would agree that under some circumstances statements to security personnel would clearly fall into this exception if they related to the circumstances of the ongoing litigation. In other words, were he to have said, or followed up to make sure that Mr. Puryear was searched, or said, you know, my client believes that Mr. Puryear is a threat to his safety, or mentioned anything relating to the ongoing litigation, I believe that the defendant would be on stronger ground here. But there's nothing in the statement, nothing in the words of the statement, nothing in the context of the statement, again, in the light most favorable to the non-moving party, that would indicate that there's any connection here. There is the implication that Mr. Schwartz and Mr. Puryear were litigating a matter at the time. It may have been later that day. It may have been a couple days later. But that's the case with most attorneys in the area of Rock Island. Ordinarily, you have a case pending against another attorney. And this brings me to my third point. The policy considerations are really what underpin the absolute privilege. It's the notion that although this would ordinarily be the basis of liability, based on some societally beneficial reason, we want to extend immunity that, in spite of the damage uncompensated to the plaintiff's reputation, we believe that this is a favorable outcome for society. And in this day and age of increasing, seemingly increasing, incivility among attorneys, and the perception that law is just a series of, a game of one-upsmanship. I think I know your point. Reading between the lines here, how many lawsuits has your client filed against a defendant? And I think that's an important consideration here, because I do believe the trial court looked at that and got the answer incorrect. Two is the answer, Your Honor.  in Scott County, Iowa. And then this action, this defamation action. Now, it is true that Perier Law, not Mr. Perier specifically, but his law firm has filed actions, attorney malpractice actions, against Mr. Schwartz on behalf of Mr. Schwartz's former clients. Again, unrelated to any personal issues between the two of them. Well, I'm just wondering, reading between the lines, I got a feeling that it's maybe the circuit judges over there are getting fed up with the lawsuits that they think are maybe too personally grounded. And that was... And I wanted to address that, because I believe that's something that the court took into consideration that was entirely outside the record. The trial judge here did mention his own personal observations of the two gentlemen, and how that played into his outcome or his analysis that led him to believe that there was this animosity that, frankly, wasn't present in the record to the extent that he ultimately concluded it was. And so, to the extent that that played into the ultimate determination here, I believe it was improper for the court to consider those matters just based on the judge's recollection or observations outside of the proceedings in this case. Were either one of those matters, or those lawsuits, or the other six lawsuits that the judge felt had been filed, scheduled for court on December 22nd? No, Your Honor. And you mentioned about this lawsuit, so one was the contract action... It was pending in Iowa? It was. In Iowa? In Scott County. And the other action was pending in... Was it pending in Rock Island County? So there was one personal action, and then in his book of business, he had clients that had malpractice claims against attorney Schwartz. Yes, and those... They weren't personal claims. They were him representing clients. Yes, they were solely per your law of PC, representing those clients against Jack Schwartz and his law firm for malpractice or breach of contract. There were, I believe, a total of, if you include those, six or seven cases at the time, but only two of them were personal actions, and the breach of contract action had actually been resolved by the time that this case came before. And I thank you. Thank you very much. Mr. Haymaker? Good afternoon, your honors. May it please the court. You know what I'm saying? Two lawyers who used to be together in a firm break up. This lawyer, Mr. Puryear, decides to file six lawsuits in the span of six months against Mr. Schwartz. Okay, I want to make it clear. He is, Mr. Puryear is the plaintiff in how many lawsuits? He was the plaintiff in two lawsuits against my client. The underlying breach of contract claim and this action. But his firm, and he specifically, has sued Mr. Schwartz in Rock Island County. Is his firm as the firm or his firm representing clients? He is the principal of this firm who represents the clients in those matters. Now, this case is subject to the absolute privilege. Judge Conway got it right in the beginning. If you look at the affidavit Mr. Schwartz filed in support of the motion to dismiss, in paragraph three, he specifically states that I brought this concern of Mr. Puryear having a gun because I'm going into an adversary proceeding with this gentleman. But he doesn't identify in that affidavit what the case number was. No, he doesn't. Why not? I never asked him the case number when I was preparing the affidavit. I don't understand why we have to say what the case number is in order for his affidavit to be invalid. Because it is important, perhaps, based on Justice O'Brien's questions, whether the lawsuit was pending against these two gentlemen. No, no. This was an OP hearing, not order of protection hearing. Okay, so this was not one of the personal actions of Puryear versus Schwartz. No, it was an order of protection hearing where they were going to represent clients adverse to each other. And I didn't want to misrepresent the record on that at all. But in paragraph three, Mr. Schwartz is concerned, given, basically, the animosity that has developed between these two over the past year and a half. But don't we want people to resolve their disputes when law firms break up by taking matters to court and not acting on a vigilante basis? He didn't act... What is filing a lawsuit evidence of some personal desire to harm Mr. Schwartz? We didn't say that in our motion of dismissal, Your Honor. We're saying, I'm an advocate proceeding to an hearing. I have a concern about the security based on my past dealings with this individual. And I bring my concern up to a deputy at Rock Island County Courthouse. Now I'm being told I've slandered him. First, the court was correct in finding that the absolute privilege applied. But in ruling on the motion for 137B sanctions, the court should have found that the pleading, which was a verified complaint by Mr. Puryear, saying everything was true and correct in it, and sworn under oath as an attorney, that it wasn't well-grounded in fact and based on reasonable investigation. What wasn't true? What wasn't true, the statement he says in paragraphs 3 and 4 of the complaint. He claimed that Mr. Schwartz did repeatedly state that the plaintiff was unlawfully armed, dangerous, and a security risk to Rock Island County Courthouse and the individuals therein. And he alleges in paragraph 3 that that statement was on December 22, 2011. He filed this lawsuit on December 30, 2011, nine days after this alleged slander. He then has, through Mr. Maile, a FOIA request to the Rock Island County Sheriff's Department done on January 23, 2012. What's that show? It shows that the actual statement made to Chief Deputy Frank Weichert was, you know who you should be checking is Eric Puryear. He carries a gun. And isn't another thing, though, that I guess maybe operates against your case is that he says that that statement took place on the 19th and you said that it happened on a different day. No, I'm saying that the verified complaint is false, Your Honor, because they allege a wrong date. Mr. Puryear doesn't have any personal knowledge of these facts. He wasn't there when the statements were made. So he is saying, in a verified plea, that this statement happened on December 22, 2011, and that he was being accused of being unlawfully armed, unreasonably dangerous. Well, in three weeks, he finds out that the statement was actually three days earlier and that it was, you know who you should be checking is Eric Puryear. He carries a gun. That is not accusing Mr. Puryear of any unlawful conduct. That is not accusing him of... Well, is it lawful in Illinois to carry a gun in the courthouse? Well, I don't think it is, but... So that statement is accusing him of an unlawful act. He says you should check him. He isn't saying check him out in the parking lot. He's saying check him here, isn't he? But nothing says that he was unlawfully armed. You may not be able to bring it into the courthouse, but that doesn't say he didn't have a permit to carry a gun. But why would he be saying, check Mr. Puryear, he carries a gun? Because he was being searched at the same time. But if you're saying you do it, You're alleging it's not legal in Illinois to have a gun on your person in a courthouse. But you're saying that that statement of check him, he carries a gun, isn't alleging anything illegal. No, I'm saying that it isn't alleging that he's engaging in illegal conduct. If he is checked at the security guard's gate and doesn't come in with the gun, he hasn't engaged in illegal conduct. I mean, that's the purpose of the search. But what is then your client, you say that he spoke to this chief deputy because he was concerned for his safety because they were going to this contested OP. Again, I'm sorry. May I please finish? So I'm trying to find out, what then is he looking for? If you're saying, my client isn't saying he has a gun, he's looking to make sure that he's going through a safe court process with somebody he knows has animosity toward him, as demonstrated over the past year and a half with repeated lawsuits against him and by Mr. Puryear himself and Mr. Puryear on behalf of clients. If the statement that he made isn't implying any illegal activity, then what would they be checking for? Because he makes a specific statement about him carrying a gun. And that is an activity that is not legal. And yet you say, well, he isn't alleging that he was doing something illegal. He was doing it to be checked so that Mr. Schwartz was safe. I understand all of that. But if his statement was, you need to check him because he carries a gun and you're saying, well, we're just wanting to make sure that we're safe. What then is he checking him for? I mean, your client's like, hey, I'm raising a red flag. I'm concerned about this gun. Right. But you're saying, he didn't say that he was doing anything illegal. Well, you can't say check him for a gun, that's not legal and not say that he's doing something illegal. They don't interface. Well, you can legally carry a gun with a permit in the state of Illinois. You can't illegally bring the gun into court. What Mr. Schwartz's statement can be attributed to is to make sure that Mr. Courier doesn't break the law by bringing the gun into the court or through the courthouse security. There's a distinction there. He's not saying that Mr. Courier does that repeatedly in that statement. He's just saying check him because I know from personal knowledge that the man has a concealed gun permit. His affidavit doesn't say he knew he had a concealed permit. Mr. Schwartz's affidavit says that he told the deputy he carries on his person a concealed handgun. I agree with that, but when you look at the statement that was actually made, he's simply affirming to Mr. Weichert that Mr. Courier does carry a gun. Therefore, he isn't saying Mr. Courier brings these guns into the courthouse all the time and is therefore at risk for us. He just says look, if you're going to check me, check him because I know he carries a gun. That's the end of the story. The communication need not occur in the courtroom or in the pleadings or in affidavits. The fact that he said it going into the courthouse to make sure that this hearing was, in his opinion, safe extends the absolute privilege to him as an attorney in this situation. The flip side is you're going to chill his speech on this issue, number one, when it's true, Mr. Courier admits it's true that he has a gun, that he has a concealed gun permit, that he's an active NRA instructor. But he didn't say that he carried a gun into a courthouse. There's no evidence that he ever carried a weapon into a courthouse in Illinois. And neither is there any statement that Mr. Schwartz said in the past, Mr. Courier has carried guns into the courthouse. There's no facts to support that allegation at all. And that's why you have a duty, specifically as an attorney, when you're filing a verified complaint such as this, to do a reasonable investigation into what actually was said before you start bringing a defamation per se claim. And the fact of the matter is is that what Mr. Schwartz said isn't defamatory. It's the truth. He does carry guns. The gentleman admits that he carries guns. He admits he's a gun enthusiast. The fact that Jack Schwartz wanted the deputy to, in this situation, search him because of his past knowledge of him having a concealed gun doesn't rise to the level of defamation per se. And that's why when they found out through the FOIA request what Mr. Weicker actually said, they didn't abandon that plea. They continued to press on without amending the complaint to set forth in specificity what words were actually said on this date in question. Yet, he continued to pursue this claim that allegedly my client said that Eric Puryear is unlawfully armed, dangerous, and a security risk. Judge Conaway didn't dismiss this because it wasn't a defamatory statement. Judge Conaway granted your motion to dismiss because he felt the communication privilege applied. Well, that's true, but I can have this court affirm on other grounds based on the law. And in this situation... And have you presented that argument to us in your brief? I believe so. And I also presented the argument that the Citizen Participation Act applies in this situation because he was doing this in furtherance of his rights to proceed with government. Thank you. I do have one question. I just want to follow up because of the affidavits and the basis of the privilege that we have. I think it's three dates that seem to be in contest for when this actually took place. I know the night of the 22nd, but I also believe perhaps the 21st. I don't recall from the record the 21st. Even if we have two, does the privilege... Would the privilege apply for a statement made on one day regarding a proceeding three days later? Well, I don't think there's any allegation in the complaint that says that they were not going to proceed into the hearing on different dates. I would agree with you that's more of a tenuous circumstance if you were to make that. But there's no pleading set forth, factual pleading set forth in the complaint that says that Mr. Schwartz, for example, on the 19th said I'm going to have a hearing with him on the 22nd, so search him now. There's no factual allegation that way. I just think that the party, that Mr. Puryear has a different recollection of the date as to what Deputy Weikert did. But Mr. Puryear is the one who made that of record when he filed Deputy Weikert's statement in response to the motion to dismiss. So we didn't create the issue of fact on that. We're simply saying look, it was a one day thing, he made it before they were going into this contested order of protection hearing and we didn't affirm in Mr. Schwartz's affidavit what date was the accurate date. The only conflict came up as a result of Mr. Puryear's verified complaint saying it was on the 22nd. And then in response to the motion to dismiss, presenting Mr. Weikert's statement that says that it happened on the 19th. And it's your position that you have asked us to affirm on the grounds that the motion to dismiss should have been allowed because the statement was not defamatory? Yeah, if you look in my section on 137B... I understand, but I'm saying in support of the sanctions motion, in support of the sanctions motion, I've made the argument that the statement that actually was made was not... I misunderstood what you told me. Okay. Thank you, Your Honor. Counsel. Thank you, Your Honor. And briefly to address the sanctions issue because that was addressed by counsel. The factual basis for this complaint was thoroughly addressed at the motions hearing on the sanctions issue. And Judge Conway came to the conclusion that there was a sufficient factual basis that sanctions on that basis were not grounded under 137. The issue for him was the legal side of this. Well-grounded or warranted by existing law. I think it's important for this court to consider that that was not addressed at that hearing. That it was not addressed in the pleadings leading up to that motions hearing itself. And had it been examined, I would have at least had an opportunity to examine or to express to the court the efforts I went through in researching this topic and researching the complaint. And I believe the outcome would have been different had the court considered that. Rule 137 is specifically worded for a reason. It's penal in nature, and as a result of that, it's strictly applied. Let me ask you, what's your factual basis for the allegation that the defendant said that Mr. Currier was unlawfully armed? Certainly, Your Honor. The basis for that and this doesn't come out with the response to the motion to dismiss. But I think it's a bit unfair to characterize the response to that motion as encompassing the entire investigation that went into filing the complaint to begin with. Frankly, there were several statements made to Mr. Currier in the immediate aftermath of this statement made by Mr. Schwartz, suggesting that, oh, we heard that this was said about you in Rock Island, and now they're checking everyone, and that, again... So maybe somebody else might have slanged your client, but where is the factual basis that the defendant said your client was unlawfully armed? And again, with my discussions that went into the complaint, my discussions with filing the complaint didn't necessarily comport with the interdepartmental memorandum we received later. Still, we thought that was important to include with the motion to dismiss. And did you put another affidavit, or put the deputy on the stand to say that he said that? Oh, well, where in the record can I find evidence that your allegation that Schwartz said your client was unlawfully armed, where am I going to find that in the record? Well, you're not going to find that exact statement. But there's a reason that we use the term on information and belief. Based on the courthouse's complete change in policy regarding security, based on the statements that were being made to myself, Mr. Perier, in the area, from other attorneys, based on my discussion with Deputy Weikert, that's what we believe the substance of that statement was. And ultimately, Deputy Weikert's memorandum is completely different, and I would agree. I don't know that I would necessarily agree that it meets the innocent construction standard, because it is illegal to carry a gun in Illinois. Well, it is illegal to carry it into the courthouse, is what I mean. And at the time... You said he carries guns. But I think the implication from that is you need to check him because he's going to do it here, or there's a risk that he's going to do it here. And again, that would imply the commission of a crime. So, again, I believe there's a factual basis for it. Judge Conway agreed that there's a factual basis for it, didn't examine it at all at the hearing, or give me the opportunity to express how I research this matter, how the law, I believe, if the attorney litigation privilege did justify why I would be arguing for the extension or modification of the law. And ultimately, I think at the end of the day, the court here, the trial court here, has extended the law, has modified the law. I think the privilege is so narrow, ordinarily, its extension of that privilege presents real dangers. And for all of the reasons I've discussed today, Your Honor, I'm asking that this court reverse the trial court here on both the issue of the motion to dismiss and the sanctions and demand further proceedings. Thank you, Your Honors. Thank you. We will be taking the matter under advisement and rendering a decision as quickly as possible. We thank you for your time today. We'll be in recess for a short lunch break.